Mr. Inman, you may proceed. Thank you, Your Honor. May it please the Court, I am Arthur Inman from Peoria for the defendant appellant James F. Clark. If I may, a quick review of the facts under which this statutory construction and case involving also discretion of the trial court arises. The case opens with the Bartonville police officer called to the scene of a traffic accident outside a bar. And it appears after he arrives at the accident, he finds that a car not having the right of way in an intersection cut off a motorcycle which then collided with the car. The driver and the passenger of the cycle were lying on the road when the officer arrived. Both were taken to the hospital in obvious distress and clearly injured. After routine investigation at the accident scene, the car driver was ticketed and the officer went to the hospital. When he arrived there to interview the defendant, James F. Clark, the driver of the cycle, he learned that a blood sample had been taken without his request and prior to his arrival. That was in the course of his investigation. He did offer Clark the breathalyzer test and went through the litany after which Clark refused the breathalyzer test. The officer did note at the hospital that Clark was again in obvious distress with a mangled leg as he had originally observed at the accident scene. Now, the blood sample taken at the hospital did reveal a blood alcohol content in excess of the statutory minimum of 800.08. The presumptive level for driving under and the prohibited level for the secondary statute concerning blood alcohol content. Clark was prosecuted on two counts, one for driving under the influence and the other for the excess blood alcohol. He was acquitted of the driving under the influence and convicted on the blood alcohol count. Now, the blood alcohol information obtained from the hospital, therefore, is the sine qua non of Clark's conviction in this case. And so we have the question in the factual background. Did the testimony from Karen Miles, the secretary at the hospital, properly establish under the statute that the blood was properly obtained? Now, in that connection, of course, there are three parts to the statutory requirement. The first is that the blood alcohol, that the blood sample was taken in the regular course of providing emergency medical treatment and not at the request of a law enforcement official. Secondly, that the blood sample was examined in a lab routinely used for that purpose by that hospital emergency facility. And thirdly, that it would be admissible regardless of when the record was prepared. Only the first part is at issue here. And that first part, again, is whether the blood was taken in the regular course of providing emergency medical treatment. And on that, the testimony is not compelling. In fact, the individual, Karen Miles, who was called with the business records of the hospital, that is, records admissible as an exception to the hearsay rule with all the usual business records requirements, and the peculiar requirements for blood alcohol within the statute. The testimony of Karen Miles, the foundational witness, was not compelling. In fact, seemed to avoid the issue. Miles admitted that she could not tell from reviewing the records, specifically the blood alcohol information, why the blood sample was ordered or even that the blood was taken in the regular course of emergency hospital activity. She could not verify these specific blood alcohol records as being, in other words, taken in line with the requirements of the statute. Now, the court and the prosecution arrived at what one might say is a resourceful solution to the problem, in that they simply looked at that part of the records as part of the larger overall hospital records, and she was asked then to verify, well, does this whole record, I think it was somewhere around 100 pages, is this whole record part of hospital records kept in the ordinary course of business? And she thought that they were and said as much to the court, and that was the basis of the court's admission of the evidence. Clark objected in the trial court and objected in the post-trial motion, and the case was argued and considered by the trial court, which ruled as obviously adversely to Mr. Clark. The only case applicable under the latest iteration of the statute which allows these hospital records appears to be the Olson case, examined at some length both in the appellant's brief and in the appellee's brief and considered by the trial court. There are important distinctions between the testimony of the foundational witness in the Olson case as opposed to the foundational witness in the instant case. The foundation witness in the Olson case verified the records of the Alexian brothers and indicated that although the particular person requesting the blood alcohol or blood sample in the Olson case wasn't identified, it was clear from the context of the records that the blood was ordered in the regular course of emergency room treatment of Olson, and in fact was reviewed and used by a physician shortly after it was taken. There is, by the way, no evidence in this record of any use of the blood sample other than establishing blood alcohol or subsequent prosecution in the instant case. So the response of the state in light of that is to suggest that Clark is micromanaging or microanalyzing the record and going into undue detail of some particular part of the record which the court found to be admissible on the whole. As I was considering that argument, I wondered if lawyers had ever thought about seeing something in a mass of records that maybe is a little fuzzy or maybe they suspect is not admissible, and saying, well, if I leave it in this mass of stuff, most of which looks admissible, can I get it in? Maybe we're unduly cynical to assume that a lawyer would try to slip something by in that fashion, but it strikes me that that is what this kind of argument amounts to, not necessarily by intention, but something that's not admissible comes in as part of a greater whole. That is the effect of the action taken here. The foundation was not met for this particular item, but it is part of a larger mass, most of which is okay, and so it comes in. I'm unclear on the record, Mr. Hinman, but the group of medical records, Miles was testifying as a foundational witness to allow those to be admitted, is that correct? That's correct. She was there solely as a foundational witness. Okay, and included in those records was, of course, the blood test. Yes. Okay. When did she talk about the lab routinely, the analysis of the blood being done by a lab routinely, or the routine lab, the second requirement? You're saying you're only focusing on the first, but that the chemical tests performed were performed by a lab routinely used by the hospital. Did she talk to that point at all, or when did she? At this point, I have to admit I can't identify the spot in the records. I think in the trial court, it's my understanding that court in both counsel really didn't get into the question of the lab issue. And you're only contesting the first issue, right? Yes, Your Honor, that is where I'm going to. There's some question as to whether she talked to that point after all those records were admitted. Well, and I'll be happy to. If the court has doubts on that, I'll certainly encourage the court to entertain those doubts. But that is not the focus of the argument that I'm making today. But I think to that point briefly, I think the whole testimony concerning the background of the records is not convincing. And we can speculate, as the trial court did, about the reasons for calling for those records and say, well, maybe they anticipated surgery, and maybe having that knowledge of blood alcohol was necessary for that. That was a suggestion that Judge Kelly made during his discussion. But when we're dealing with this exception to the hearsay rules, I submit that we don't rehabilitate a defective foundation by speculating that there may have been a valid purpose for calling them, and therefore, it's in the regular course of hospital business. Something in the record ought to suggest that it was done in the normal course of hospital business, not a speculation as to why they might call for it. Thank you. Mr. Emmett, I need to understand something about your argument. Are you saying that the doctor had to have a specific reason for wanting the blood alcohol specifically, or is it enough that he just needed to have a blood test that included the blood alcohol as part of it? Well, I guess I can get to that. The older statutes required that the medical personnel ordering it be identified and that there be a somewhat stricter line of authority. The newest version of the statute is somewhat more liberal, I think, in terms of admissibility. But as I understand the court's question, does the doctor have to have a specific purpose in mind, or can it be some more general identified need or some more general overall need? Do I understand the question? You said something earlier that suggested, and maybe I didn't understand what you were saying, but you suggested that there had to be a reason why the doctor would want to use the blood alcohol result in order for it to be that particular element of the blood test to be included. Well, I don't think it's that strict. I mean, the doctor doesn't have to have a specific reason in mind, as in the trial court speculation. All right, maybe we're clearly going to surgery, so I need the blood alcohol content, or we're clearly going to do something that requires that knowledge. I don't think it is that strict. But I think saying it's not that strict doesn't get us away from a test to be ordered in the course of treatment, in the course of treatment of that patient in that context. I mean, the trial court speculated, well, certainly not some rogue doctor just grabbing blood samples. Well, maybe not, but that still doesn't bring the testimony here up to the regular course of treatment. Your time is up, Counselor. Thank you. Thank you, Mr. Inman. Mr. Genetovic, you may respond. After you've been at police court, counsel. We are addressing a hearsay exception, statutory hearsay exception. We have a document that we want to take a minute to evidence, and of course it's hearsay. Under the statute, the statute requires, as counsel has already provided, that a foundation has to be established. That foundation requires that the test has to be done in the course of providing emergency medical treatment, not at the behest of law enforcement, and that it has to be performed by a lab routinely used. With respect to Your Honor's question about the lab, in my brief at page 5, I cite there, relating the testimony from the medical secretary, I pointed out that she testified that laboratory test results were ordered during the course of defendant's treatment, were performed by the laboratory routinely used by St. Francis Hospital. I cite R-4049 of the record, and I also indicate that that lab is located next to the hospital, and that's R-7576 of the record. But her testimony was before a motion to admit, or? It was during her testimony. Yes, it was done beforehand. Her testimony came before the motion to admit was, and before everything was done. It was all made as part of the foundational aspect of the admission of the medical report. In this particular case, we have an individual who was involved in an accident, as counsel pointed out, who had a badly mangled leg. We also know from the history in the record that right after he refused a breathalyzer or another blood test or whatever was requested by the officer, he immediately was carted off to the operating room. So what we have is we have a fascist scenario. We have somebody seriously injured who is being prepared, obviously, for emergency surgery on a badly mangled leg. During the course of his treatment in an emergency room for his injuries, one of the things that was performed was a blood alcohol test, or a blood test, and part of that that came out was the blood alcohol content. We have absolutely no testimony whatsoever, no evidence whatsoever, that the officer ever asked the hospital to do anything with respect to BAC. All that the officer ever did was ask the defendant for his consent to do one, which he refused. So first of all, under the facts of this case, I think if we have a blood alcohol test report in the entire group of medical records that were supplied by the hospital that were compiled, as the witness testified, as a kind of historical documentation of this individual's treatment in the hospital, in the emergency room, and we have evidence, or we have no evidence, that that blood test was done at the behest of the law enforcement officer, I think it is very safe to conclude from the record that this blood test was done as part of the emergency medical treatment of the defendant in the hospital. Why else was the test done? And if we have to take, which I don't, which I submit we don't have to provide any reason why the test was ordered, why the test was called for. We don't have to have the doctor coming by and saying why he ordered the test or that he relied upon the results of the test or anything like that. But if we have to take and come up with some reason why the test was done, it's obviously because this guy is going to be going off to surgery and they need to know what they have to be able to do, what is in his system, so they can administer proper medications so they don't kill him. So we don't have to have a foundational witness say that this is done in the regular course of an EMT? No, I don't think we do. I think in this particular case, based on the facts that we have, because we have her testimony, and her testimony was to the effect that the records, all the medical records that were provided, which is basically People's Exhibit 2A, that these records provide a picture of the tests that were ordered during the course of defendant's treatment. I think that testimony in and of itself is enough to establish that in this record, everything that was done, this is the medical records, all of this is a history of his treatment in the emergency room. Part of that treatment was the blood test. Part of that blood test was the BAC. With no other evidence whatsoever that the hospital did this or did a test at the behest of law enforcement, we have established the first factor. Because I submit that the whole import of this first foundational aspect is to establish that it's the record of the hospital and that it was done because the hospital did the test, not because of law enforcement. Because if law enforcement asks for a blood test, we have a whole different gamut of requirements that are needed in order to get that admitted. We have to follow the standards set by the Illinois State Police. Certain things have to be collected a certain way. They have to be maintained in a certain way, et cetera. We're not talking about that. Because we're talking about a hearsay exception, the foundation required. We want to take a show that this medical record is something that was generated by the hospital in the regular course of their business. And that's exactly what we have done. It's exactly what the record shows. It's exactly what the record establishes. Well, the record shows. I mean, the record is in. But we're talking about the substance of the record. Well, I'm talking about the record on appeal. And I think the substance of that record that we have in our record on appeal is more than enough to establish the foundation for the admission of this blood test. And I think we've established both factors such that this report was properly relied upon. I think it's a little disingenuous to take and argue that the BAC test that was done in this case was only done for one purpose and one purpose only, and that was to prosecute this defendant. I don't think that is really accurate. Was it used to prosecute the defendant? Of course it was. But that's not why the test was drawn to begin with. It was drawn as part of this guy's medical treatment, as part of the defendant's medical treatment, not because the state, at the behest of the police officer, saw that. And we know that because this hearsay exception record says it was done. We know. You said it a couple times, and I want to know what. It being the record, the record says that the test was done. Yeah. And as part of this medical record, we have testimony that the medical record, all of the medical records, which included the BAC, was all the historical perspective of the treatment provided to the defendant in the emergency room. I'll get back more simply. It refers to the test. And I know it was done in the regular course of treatment because she testified these records were kept in the regular course of business. Was that her argument? She testified that these records were kept in the regular course of business as well as the BAC. That's all she tested? Where else did she test? She testified that these were the historic, these notes are made either contemporaneously or shortly after, and they reflect the treatment that was provided to the individual during his treatment at the hospital. Right. Yeah. That's all they say. And that's all we need. Okay. Why? Because that's all the statute requires. The statute doesn't require us to do anything else. It doesn't require us to provide why we did it. The old statute said the doctor had to rely upon it. That's absent. We don't have to establish that. I think all that that first factor is really trying to establish is the fact that this test was not done because of the law enforcement, that it was not done with the eye toward prosecution. It was done more with an eye toward treatment. And that, I think, is all we have to establish. She never directly testified it was done in the regular course of treatment, did she? She said these records were kept. The records reflect the treatment that was provided in the regular course of treating this individual. Now, could she take and make that medical determination? Of course not. She's a medical secretary. But I think that the records, and I think this is exactly the same evidence and exactly the same type of witness that testified in Oldsville. So I think that the case of Olson, in this case, paralleled each other remarkably well to the point where I don't think there's absolutely any problem in the admission of this particular test report in this case. So we would just ask for this court to affirm. Any other questions? I'll be more than happy to respond. I don't believe there are. Thank you. Thank you. Mr. Inman, you may reply. Thank you, Your Honor. It strikes me that during oral argument we have heard an even stronger request or claim for the statute than the statute justifies, and I think the court touched on it in one of the questions directed to the appellee's counsel. The way I have it, he appears to argue that if the test was done, it was done in the regular course of treatment. That seems to be the argument. If it's here, part of the records, obviously it was done in the regular course of treatment and nothing else is needed. That's the way I hear his statement of the statute, and I don't think that that is why the statute is there in the form it is. Obviously, there's no question on this record that the blood analysis was not ordered by the police officer, and that is not part of this appeal. But something more is needed than just a recital of the fact that the blood alcohol content was determined, a blood sample was taken. Something more is needed than just the recital that it was done to establish that it was done in compliance with the statute. There has to be something indicating that it was done in the regular course of treatment in order for it to be admissible. Counsel has argued that it was being prepared, obviously, for surgery on the leg. But where in the record does it say that? We might infer it. We might guess. We might speculate. But someone who's familiar with the records and meets the requirements of a foundational witness, and we have not questioned the ability of Ms. Miles to be a foundational witness, someone here ought to be able to tell us or to tell the trial court at the time admission is sought that this particular piece of evidence, which is the particular piece which has the statute behind it, was ordered in the ordinary course of treating the patient. What if Ms. Miles was asked the question, are you familiar with the medical records? How familiar are you, et cetera, et cetera, establishing that she is quite familiar with these records? And she would testify to the fact that all the records she sees for emergency treatment all contain a blood test. Would that be sufficient? Well, I guess I've complained about speculating. I think that is a speculation. But I suppose if there's something in the record saying that every emergency room test. Yeah, she says I look at it routinely. I must examine 20 records a day or transcribe whatever her job is. And every one of them that I can recall has a blood test. Well. If she was asked and answered. Yeah, if such were part of the record, perhaps that would make it. I'm trying to establish what has to be there in that testimony of a foundational witness from your interpretation of that first section. Although it would pass muster. Yeah, again. Would that establish routine? Well, yeah, I guess it would. Although, again, stepping outside the record, having had a blessedly few experiences in the emergency room in my lifetime, perhaps one out of the four or five, did anyone see an emergency that required taking a sample of my blood? I mean, so I guess I'm suggesting I don't think it is an inevitable part of emergency room protocol to order a sample of blood. Now. But we're saying Miles. Yeah. Could have been asked that in her testimonies. Assumedly. Yeah. If it were, as I suggested, it could have been. Yeah. Well, she could have been asked that, but she wasn't. That's correct. But I'm trying to see, following up on Justice McVeigh's earlier question, do we have to have a medical treater make this foundational requirement? Well, I guess my answer there is I looked at a number of earlier cases, which all unfortunately construed earlier statutes. And while I might like the language of those earlier cases, which do require something like that, some indication of who ordered it and for what purpose and was it used. So earlier, I'd say the answer is, you know, someone ordered it for a specific purpose and that had to be that had to be shown. I don't think it's quite so strict here, but I don't think it goes off into saying that as the appellee argues that if it was done, it was obviously done in the ordinary course of treatment. So I think the I think the quick answer is there has to be some indication that it was done in the ordinary course of treatment. And that much at least carries over from the from the earlier statutes and the earlier cases, not just that if it was done, it's a proper, valid and OK and can come in as part of a massive record. You're saying that looking at her testimony as a foundational witness, it is not a reasonable inference that you can establish that. That is correct. That is correct. Doesn't the state just require the state to establish the foundation that the test was ordered as part of the hospital's routine that night and not at the request of somebody else's routine? Well, no, I don't think the records established this test was ordered as part of the hospital's routine that night, not routine treatment, but what they ordered that night. Well, and again, this this comes to the point that I think that gets to the point of saying if it was done, it's properly there. And I think the statute requires more than that. Statute requires that it be ordered as part of the hospital's routine. Well, at the request of somebody else. OK, well, I but I don't think the testimony even establishes that it was done as part of a routine. It's there. And I think we need something more than it's there to establish that it's part of a routine or that it is part of the regular course of treatment. There you're not contesting that it was done. No. You're just are you contesting that the doctor ordered the test? Well, we don't know who ordered the test from this record. We did not in Olson either, by the way, but we do know that there was a situation in the context in Olson, clearly indicating that an emergency room personnel did specifically order the test and it was used. In this case, I did observe that the only thing that was used for was prosecution. But contrary to the representations of my argument, I'm not asserting that it was taken for that purpose. But all we know here is that the record was done. The blood was taken. By? Well, presumably emergency room personnel or someone. That's not clear from the record. But assuming assuming it was. But you're saying routine is lacking. That is correct. Thank you. Thank you, Mr. Inman. Thank you, Council Bull for your fine arguments this morning. In this matter, it will be taken under advisement. A written disposition shall issue. The clerk will stand in brief recess for panel change.